UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DEVYN WILLIAMS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:17-cv-00899-RDP |
| } | |
| **STATE OF ALABAMA** } | |
| **DEPARTMENT OF CORRECTIONS,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion for Summary Judgment. (Doc. # 36). The Motion is fully briefed and ripe for review. (Docs. # 36, 41, 42). After careful consideration, and for the reasons discussed below, the court concludes that Defendant's Motion (Doc. # 36) is due to be denied.

### I. Background

The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

#### A. The Rule 56 Facts

On April 6, 2015, Plaintiff Devyn Williams ("Plaintiff") was hired by Defendant Alabama Department of Corrections ("Defendant" or "ADOC") as a Correctional Officer Trainee ("COT")

to work at the Donaldson Correctional Facility in Bessemer, Alabama. (Doc. # 36-1 at 111). To become a permanent employee with ADOC, COTs are required to serve a probationary period of at least six months and graduate from the Academy within a year of being hired. (*Id*; Doc. # 36-11 at 13). The Alabama Peace Officers Standards & Training Commission ("APOSTC") is an independent regulatory agency that oversees the training and certification of all law enforcement officers. (Doc. # 36-7 at 9).[1] The APOSTC certifies Defendant's Academy, which is a one-time, twelve-week basic course located in Selma, Alabama. (Docs. # 36-2 at 42, 90; 36-7 at 9). After ADOC hires a COT, it must submit an application to APOSTC. (Doc. # 36-7 at 9-10). APOSTC then enrolls the COT in the next available Academy. (*Id.* at 11). Once a COT has been enrolled in the Academy, ADOC may not make any changes to the COT's employment status without requesting the application back from APOSTC. (*Id.* at 30). If that occurs, when APOSTC returns the COT's application to ADOC, that employee is removed from the certification process. (*Id.* at 28).

The Academy itself consists of 480-hours of basic instruction and forty-three hours of firearms training. (Doc. # 36-7 at 57). To graduate from the Academy, COTs must pass a written examination, a first aid examination, and a legal issues examination. (*Id.*). COTs must score at least 70% on each examination, and pass a physical agility ability test ("PAAT"). (Doc. # 36-7 at 45-46, 57). The PAAT requires a COT to push a car, climb a six-foot wall, walk on a balance beam, crawl through a window measuring less than two feet by two feet, pull a 165-pound dummy, run one and a half miles in fifteen minutes and twenty-eight seconds or less, do twenty-two pushups in a minute, and do twenty-five sit-ups in one minute. (Docs. # 26-7 at 46; 36-4 at 21). If a COT fails to pass a PAAT, she may retake it within forty-eight to seventy-two hours. (Doc. #

---

[1] In this Opinion, the court cites to the court-filed page numbers of documents, not the page numbers found on the actual documents.

36-7 at 57). However, ADOC tries to reduce the COT failure rate by requiring COTs to participate in physical training ("PT") every month, which consists of a one and a half-mile run, twenty-two pushups, and twenty-five sit-ups. (Docs. # 36-1 at 111; 36-4 at 18-19; 36-7 at 52-53). Upon completion of the Academy, APOSTC certifies the COT as a Correctional Officer. (Doc. # 36-7 at 11).

Plaintiff was initially hired in March 2015 and completed PT on a monthly basis through September 2015. (Docs. # 36-7 at 99-100; 40-1; 40-2; 40-3; 40-4; 40-5; 40-6; 40-7). In October 2015, Plaintiff's superiors informed her that she was going to attend the Academy that month. (Doc. # 36-1 at 123-24). However, APOSTC prevented her from attending because she had several unpaid traffic tickets. (*Id.* at 127-29). After Plaintiff resolved her outstanding traffic tickets, in February 2016 Defendant issued her a ninety-day extension to attend the Academy. (*Id.* at 131).

On December 2, 2015, Plaintiff learned that she was four months pregnant. (Doc. # 36-1 at 126, 193, 199). Her OB-GYN, Dr. Greg Banks, provided her with a note that said, "To Whom it May Concern: [Plaintiff] is a patient of mine and she is pregnant with an [expected delivery date] of June 19, 2016. If you have any questions, you may call my office at 205-877-2121." (Doc. # 36-1 at 112). Plaintiff turned in the note to Warden Cedrick Specks ("Specks")—one of her supervisors at ADOC. (Doc. # 36-1 at 169-70). After learning of Plaintiff's pregnancy, Defendant did not call her in for December PT. (*Id*. at 178, 180, 181; Doc. # 40-8).

On December 8, 2015, ADOC Director of Training Elliot Sanders ("Sanders") began an email chain with ADOC Director of Personnel Bill Lawley ("Lawley") and ADOC Deputy Commissioner Matthew Brand ("Brand"), discussing the possibility of separating Plaintiff from her conditional employment in light of Dr. Banks' note on December 2nd. (Doc. # 36-5 at 61-74). Brand replied to Sanders, "Let me guess, we have to pay this person [Plaintiff] through the entire

pregnancy and for a short time afterwards and she cannot enter the academy pregnant?" (Doc. #36-5 at 66-67). Sanders then stated that "[t]he last meeting training had with personnel regarding this was that we would separate from state based on the fact that they cannot meet physical standards at this time. The discussion centered around being consistent across the board with people that cannot meet physical standards for any reason." (*Id.* at 66) Brand replied, "Refreshing…thanks." (*Id.*).

The conversation between Lawley and Sanders was longer and more in-depth. Lawley began by telling Sanders that "[i]f [Plaintiff] is to be placed on medical restrictions and is unable to perform her role as a COT, to include physical training, it would be appropriate . . . to separate her from probationary status." (Doc. # 36-5 at 61). Sanders then asked whether he needed to get anything from Dr. Banks establishing that Plaintiff could engage in physical training. (*Id.*). Lawley replied with the following:

> It would be OK to ask, in response to receiving the statement, if the physician is placing [Plaintiff] on any restrictions at this time. And, if not, would [Plaintiff] please provide a statement from her physician to indicate that it is OK for her to continue to perform her responsibilities. You could ask that [Plaintiff] provide something which clearly indicates one or the other.
>
> If [Plaintiff] is saying that she can't do everything her position requires, to include physical training, she could be asked if she is resigning. And, if not, let [Plaintiff] know that she should obtain a statement from her physician to indicate that she has restrictions.
>
> Remember, we can't and don't care what the reason for physical limitation is and we can't assume physical limitations. We separate probationary COT's if they have limitations which are anything more than temporary in nature.

(*Id.* at 61).

On January 5, 2016, Plaintiff had a follow-up visit with Dr. Banks during which he gave her the following note, "To Whom it May Concern: [Plaintiff] is a current obstetrical patient of mine. Due to her current pregnancy, please excuse her from performing PT training for remainder

4

of pregnancy. If you have any questions regarding this matter contact my office at (205) 877-2121." (Doc. # 36-1 at 113). Plaintiff submitted this note to Specks the next day. (Doc. # 36-1 at 78-79).

On January 20, 2016, Sanders emailed Brand saying that "according to [Lawley] this [January 5 note from Dr. Banks] will give us grounds to separate [Plaintiff] from service." (Doc. # 36-5 at 64). Brand then emailed Lawley, stating, "[Plaintiff] is pregnant, and if she cannot do PT, she cannot perform the [PAAT] at the beginning of the academy nor participate in the mandatory PT that the academy does. Can we remove [Plaintiff] from probationary employment?" (*Id.*). Less than ten minutes later, Lawley replied to Brand with "I am deleting your email and would ask that you do the same. We need to talk." (*Id.*).

The next day, January 21, 2016, Brand emailed ADOC Warden Leon Bolling ("Bolling"), instructing him to proceed with paperwork to remove Plaintiff from her probationary employment because she was no longer able to participate in the PT program and therefore could not attend the Academy in February. (Doc. # 36-2 at 77). Plaintiff's application to the Academy had already been returned at Defendant's request by APOSTC on January 15. (Docs. # 36-2 at 95). On January 22, Warden Bolling sent a request to Grant Culliver ("Culliver"), the APOSTC Associate Commissioner of Operations, that Plaintiff be separated from probationary employment with Defendant due to her pregnancy. (Doc. # 36-2 at 94). On January 25, Plaintiff received notice of separation from her employment with Defendant. (Doc. # 36-1 at 118).

### B. Plaintiff's Charge And This Lawsuit

On February 29, 2016, Plaintiff filed a charge of pregnancy discrimination with the EEOC. (Doc. # 1-1 at 2). The EEOC issued Plaintiff a right-to-sue letter on March 1, 2017. (Doc. # 1-2 at 2-3). On June 1, 2017, Plaintiff filed a complaint with this court, alleging one count of pregnancy

discrimination under 42 U.S.C. § 2000e(k). (Doc. # 1 at ¶¶ 30-36). On June 3, 2020, Defendant filed its Motion for Summary Judgment. (Doc. # 36).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c). The moving party must show the court that there is a basis for granting summary judgment, as well as point to the evidence contained in the pleadings that demonstrates an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When the movant has met its burden, Rule 56 requires the non-moving party to highlight specific facts beyond the pleadings (such as affidavits, depositions, interrogatory answers, or admissions on file) that show a genuine issue for trial. *See Id.* at 324.

In making a determination as to which facts are material, a court is guided by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any reasonable doubts about the facts, or any justifiable inferences derived therefrom, are resolved in favor of the non-moving party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). A dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*, 477 U.S. at 248. To survive a properly supported motion for summary judgment, the non-moving party cannot make it to trial by asserting "mere allegations;" rather, it must come forward with at least some evidence to support each element essential to [its] case at trial." *Id.* at 252; *see also Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

A court is required to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, a court's inquiry in a Rule 56 motion is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.   Analysis**

Defendant argues that it is entitled to summary judgment for three reasons. First, Defendant asserts that Plaintiff cannot establish a *prima facie* case of pregnancy discrimination. (Doc. # 36 at 11). Second, even if Plaintiff can establish a *prima facie* case of pregnancy discrimination, Defendant claims it had legitimate, non-discriminatory reasons for separating Plaintiff from her conditional employment with ADOC. (*Id.* at 13). Finally, Defendant asserts that Plaintiff has failed to establish that "but for" ADOC's discriminatory intent, she would not have been separated from her conditional employment. (*Id.* at 14).

Plaintiff opposes Defendant's Motion. (Doc. # 41). In her briefing, Plaintiff articulates two reasons the court should deny Defendant's motion for summary judgment. (Doc. # 41). First, Plaintiff argues that she established a *prima facie* case of pregnancy discrimination. (*Id.* at 21). Second, Plaintiff contends that she has shown through direct evidence, or at the very least circumstantial evidence, that Defendant's decision to terminate her employment was motivated by her pregnancy. (*Id.* at 21-24).

7

The court begins its discussion by reviewing Plaintiff's direct evidence claim. The court then addresses the circumstantial evidence of pregnancy discrimination in the Rule 56 record. Finally, the court analyzes Plaintiff's claims under a mixed-motive framework. After careful review of the Rule 56 record, the court concludes that there are material issues of fact for a jury to resolve and Defendant's Motion (Doc. # 36) is due to be denied.

### A. Direct Evidence of Pregnancy Discrimination

A plaintiff may show discrimination under Title VII through direct evidence, circumstantial evidence, or statistical proof. *Alvarez v. Royal Atlanta Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Direct evidence is that which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Board of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1999). Thus, if an alleged statement suggests only a discriminatory motive at best, then it is circumstantial evidence, not direct evidence. *Burrell*, 125 F.3d at 1393.

Plaintiff argues that she has presented direct evidence of Defendant's discriminatory animus regarding her pregnancy. (Doc. # 41 at 22). Specifically, Plaintiff contends that Warden Bolling's deposition, in which he testifies that Defendant's decision to separate Plaintiff from her employment was motivated by her pregnancy, proves "the ultimate issue of discrimination." (*Id.*; *see* Doc. # 36-2 at 81). However, a reasonable jury would likely need to make an inferential step between Warden Bolling's statement and the conclusion that Plaintiff was terminated exclusively because of her pregnancy. In the Eleventh Circuit, "[a]lthough these statements suggest discrimination, they are not the type of 'blatant remarks' from which discrimination can be found without aid of an inference." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999).

8

Here, the court need not decide whether the statement made by Warden Bolling constitutes direct evidence of pregnancy discrimination because there is enough circumstantial evidence of pregnancy discrimination in the Rule 56 record to withstand Defendant's Motion. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (determining that a plaintiff may survive summary judgment by either presenting direct evidence of discriminatory intent or by satisfying the burden-shifting framework under *McDonnell Douglas*); *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) ("We do not have to decide whether [Plaintiff] has presented direct evidence because she has presented enough indirect or circumstantial evidence to survive summary judgment.").

### B. Plaintiff Has Presented Circumstantial Evidence of Pregnancy Discrimination

In the Eleventh Circuit, any Title VII claim not supported by direct evidence of discrimination is evaluated under what is called the *McDonnell Douglas* burden-shifting framework. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) ("A plaintiff typically makes a case of discrimination through indirect evidence using the burden-shifting framework set out in *McDonnell Douglas* . . . ."); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). While there are other means by which a plaintiff can use circumstantial evidence to survive a motion for summary judgment, the court will begin its analysis with the well-established *McDonnell Douglas* burden-shifting framework. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 n.3 (11th Cir. 2005) (explaining that the *McDonnell Douglas* framework "is not the exclusive means" for showing discrimination via circumstantial evidence).

Under *McDonnell Douglas*, a plaintiff creates a rebuttable presumption that the employer illegally discriminated against her by establishing a *prima facie* case of discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *overruled in part on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). Once a plaintiff establishes a *prima facie* case,

9

the burden shifts to the employer who must articulate a legitimate, non-discriminatory reason for terminating the plaintiff. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). If the employer satisfies its burden by articulating one or more legitimate, non-discriminatory reasons for terminating plaintiff's employment, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the reason given by the employer is merely pretext for illegal discrimination. *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *Id.* at 1142

### i. Plaintiff Has Established a *Prima facie* Case Of Pregnancy Discrimination Under *McDonnell Douglas*

In order to establish a *prima facie* case under *McDonnell Douglas*, a Title VII plaintiff must show: (1) that she is part of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for her position; and (4) that her employer treated "similarly situated" employees outside of her class more favorably.[2] *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802).

Here, Defendant contends Plaintiff cannot establish the third prong of the *prima facie* showing.[3] (Doc. # 36 at 11). Thus, whether Plaintiff has established a *prima facie* case hinges upon

---

[2] The Supreme Court recently modified the standard for disparate treatment claims under the Pregnancy Discrimination Act. *See Young v. United Parcel Service, Inc.*, 575 U.S. 206 (2015). A plaintiff seeking to establish a *prima facie* case of pregnancy discrimination must show that: "(1) she is a member of the protected class; (2) she requested accommodation; (3) the employer refused her request; and (4) the employer nonetheless accommodated others 'similar in their ability or inability to work.'" *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020) (quoting *Young*, 575 U.S. at 229). However, both parties in this case have structured their arguments around the *McDonnell Douglas* standard. While the court acknowledges that the *Young* standard may apply, it will use the older *McDonnell Douglas* factors to evaluate Plaintiff's potential *prima facie* case.

[3] To be clear, the parties do not dispute that Plaintiff has met the first, second, and fourth prongs of the *McDonnell Douglas* test.

whether she has presented evidence that she was qualified for her position at the time she was terminated. *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ*, 342 F.3d 1281, 1289 (11th Cir. 2003). She has.

Under the third prong of the *McDonnell Douglas* test, a plaintiff must show that she was qualified for her job when she suffered an adverse employment action. *Lewis*, 918 F.3d at 1220-21. Plaintiff argues that she was objectively qualified as a COT because she met the physical requirements for her position at the time of her termination. (Doc. # 41 at 19-20). Defendant contends that Plaintiff was not qualified as a COT because Dr. Banks' request that Plaintiff be excused from PT for the remainder of her pregnancy prevented Plaintiff from completing the Academy and becoming APOSTC certified within twelve months of her hiring.[4] (Doc. # 36 at 11-12).

To be "qualified" for a job, a plaintiff need only show that she met (or could meet) any objectively measurable qualifications for the position at the time of her termination. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). *See Wright v. Southland Corp.*, 187 F.3d 1287, 1300 n.16 (11th Cir. 1999) (determining that a plaintiff may be considered "qualified" for a position if she meets the criteria articulated by her employer for the position). In the present case, there is a genuine dispute of material fact as to whether Plaintiff was qualified as a COT when she was separated from probationary employment by Defendant, and this issue must be

---

[4] There is a seeming incongruity between Defendant's argument here and the email from Lawley to Sanders on December 8, 2015, in which he says "we can't assume physical limitations. We separate probationary COT's if they have limitations which are anything more than temporary in nature." (Doc. # 36-5 at 61-67). Neither of Dr. Banks' notes explicitly state that Plaintiff *cannot* participate in physical training because of her pregnant condition. (Doc. # 36-1 at 111-13) (emphasis added). Yet, Defendant appears to have assumed that Plaintiff had a physical limitation when it argues that she could not be qualified as a COT in January because her pregnancy would have prevented her from completing the PAAT in February. Although not binding, the court finds persuasive a Fourth Circuit decision stating that under the PDA, an employer may not take an adverse action against a pregnant employee because it expects that she will not be able to meet her job expectations in the future. *Wagner v. Dillard Dept. Stores, Inc.*, 17 F. App'x 141 (4th Cir. 2001).

decided by the jury at trial, not by the court. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court finds particularly persuasive Plaintiff's argument regarding her qualifications for her job as a COT:

> Defendant attempts to paint the narrative that Dr. Banks' note expressly barred Plaintiff from participating in PT, and thus from attending the Academy, leaving Defendant with no choice but to terminate Plaintiff's employment because she was no longer qualified. However, that is not the narrative of this case. Plaintiff's situation is different from that of an employee placed on bedrest or with lifting restrictions. Had either of those things been in Dr. Banks' note, Plaintiff would not be asking this Court to let a jury determine if she was qualified for her job as a COT at the time of her termination. Significantly, that is not the case at hand, which is why Plaintiff is asking this Court to let a jury determine if she was qualified for her position. While this fact is not dispositive of Plaintiff's qualifications, it [is] worth noting that the PAAT is only administered during the first week of the Academy. Plaintiff would have only been in her second trimester in February 2016 at the start of the Academy when the PAAT was administered.

(Doc. # 41 at 21, n.10) (citations omitted).

Viewing the facts in the light most favorable to Plaintiff, there is no evidence in the Rule 56 record establishing that it would have been impossible for her to take the PAAT while seven months pregnant, even if it would be medically unadvisable. It is undisputed that the Plaintiff has established the first, second, and fourth elements of her *prima facie* case. And, she has presented sufficient evidence to create a genuine issue fact on the third element: whether she was qualified.

### ii. Defendant Has Sufficiently Articulated a Legitimate, Non-Discriminatory Reason(s) For Terminating Plaintiff

Once a Title VII plaintiff has established a *prima facie* case using circumstantial evidence under the *McDonnell Douglas* framework, the burden shifts to the defendant to show that the plaintiff was terminated for at least one legitimate, non-discriminatory reason. *Rojas*, 285 F.3d at 1342. However, there is no credibility determination that the employer must overcome, and the

employer's burden has been described as "exceedingly light." *Perryman*, 698 F.2d at 1142; *Brown v. Ala. Dep't Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (quoting *Tex. Dep't Cnty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) ("The employer 'need not persuade the court that it was actually motivated by the proffered reasons.'"); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

Here, Defendant explains that it separated Plaintiff from her probationary employment because she presented a doctor's note that effectively said, "Due to the timing of [Plaintiff's] pregnancy and my concerns over the risk physical training presents to [Plaintiff] and her unborn child, it is impossible to expect that [Plaintiff] could graduate from the corrections academy and become [APOSTC]-certified before [Plaintiff's] one-year probationary employment is up." (Doc. # 36 at 13). Defendant claims that this is a reasonable interpretation based on the language included in Dr. Banks' note dated January 5, 2016. (*Id.*). Thus, Defendant claims that it had no good reason to keep Plaintiff on conditional employment for four additional months when her failure was inevitable, when it has "every right to reserve its cadet slots for those people who have at least a shot at completing the corrections academy and becoming [APOSTC]-certified and within their one-year probationary employment." (*Id.* at 13-14).

The court concludes that Defendant has met its "exceedingly light" burden under the *McDonnell Douglas* framework. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (holding that a plaintiff's failure to meet terms of employment was a sufficient reason for termination under the second part of the *McDonnell Douglas* test). Defendant has articulated a legitimate, non-discriminatory reason for separating Plaintiff from her probationary employment, even if this reason was not the ultimate driving force behind its decision to terminate her. The court now turns to the third and final part of the *McDonnell Douglas* burden-shifting framework.

### iii. Plaintiff Has Shown That Defendant's Reason For Terminating Her Employment Was Mere Pretext For Pregnancy Discrimination

To establish pretext, a Title VII plaintiff must show "such weaknesses, implausibilities [*sic*], inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). A plaintiff must introduce "significantly probative evidence" to survive a motion for summary judgment. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). If the employer's reason for termination is one that motivates a reasonable employer, a plaintiff cannot attempt to cast it in an unflattering light but must instead meet the reason "head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). A plaintiff may point to the same evidence produced to establish *prima facie* evidence to show that the employer's alleged legitimate reason was pretextual, as long as the evidence, in its entirety, is "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reason for the adverse employment decision." *Chapman*, 229 F.3d at 1024. The court must not allow itself to "[weigh] conflicting evidence or [make] credibility determinations" because the non-moving party's evidence is entitled to deference. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000).

Defendant argues that Plaintiff cannot demonstrate pretext because she cannot show that "but for" Defendant's discriminatory intent, she would not have been terminated. (Doc. # 36 at 14). Specifically, Defendant contends Plaintiff would have been terminated, regardless of discriminatory intent, because ADOC policy dictates that an employee must be separated if, for whatever reason, they cannot complete the Academy and become APOSTC-certified within a year. *Id.* Plaintiff counters by arguing that the Rule 56 record evidence contains enough circumstantial

14

evidence that a jury could find Defendant's decision to separate her from ADOC employment was motivated by her pregnancy. (Doc. # 41 at 25). Upon review of the Rule 56 record evidence, the court agrees with Plaintiff.

Plaintiff has pointed to a number of Defendant's emails from which a jury could reasonably infer that Defendant's legitimate reason for her termination was pretextual. First, the timing of Defendant's discussions of Plaintiff's pregnancy could be construed as evidence of pretext. (Doc. # 41 at 23-24); *see Norris v. GKN Westland Aerospace, Inc.*, 921 F. Supp. 2d 1308, 1316-17 (M.D. Ala. 2013). Defendant's employees first began discussing the possibility of separating Plaintiff from her employment less than a week after receiving Plaintiff's first note from Dr. Banks, before he indicated that there were any limitations on her activities. (Doc. # 36-5 at 61-67). Where an employer's comments about a plaintiff's protected class or characteristic are made in the days, weeks, and months before terminating the plaintiff, they can be considered circumstantial evidence of an employer's illegal discriminatory intent. *Norris* 921 F. Supp. 2d at 1316-17; *see Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228-30 (11th Cir. 2002) (holding that a discriminatory statement about an employee not directly related to the subject of termination made two and a half years before the employee's termination did not constitute direct evidence, but it could be considered circumstantial evidence in the pretext for determination context).

Moreover, Plaintiff argues that the content of the emails constitutes circumstantial evidence of pretext. Even ambiguous remarks may support an inference of discrimination when they are interpreted in a light most favorable to the plaintiff. *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991). *See Hunter v. Mobis Alabama, LLC,* 559 F. Supp. 2d 1247, 1259 (M.D. Ala. 2008); *see also Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (citing *Smith v. Horner*, 839 F.2d 1530, 1536-37 (11th Cir. 1998) ("Language not

amounting to direct evidence, but showing some [discriminatory] animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case."); *E.E.O.C. v. Our Lady of the Resurrection Medical Ctr.*, 77 F.3d 145, 149 (7th Cir. 1996); *Woody v. St. Clair Comm'n*, 855 F.2d 1557, 1560 (11th Cir. 1989)).

Here, the court notes that the January 20, 2016 e-mail exchange between Sanders, Brand, and Lawley is particularly illuminating on the pretext issue. (Doc. # 36-5, 61-67). As a refresher, on January 20, 2016, Brand sent the following e-mail "according to [Lawley] this [January 5 note from Dr. Banks] will give us grounds to separate [Plaintiff] from service." (*Id.*). Brand then emailed Lawley, stating, "[Plaintiff] is pregnant, and if she cannot do PT, she cannot perform the [PAAT] [ ] at the beginning of the academy nor participate in the mandatory PT that the academy does. Can we remove [Plaintiff] from probationary employment?" (*Id.*). Less than ten minutes later, Lawley replied to Brand with "I am deleting your email and would ask that you do the same. We need to talk." (*Id.*).

This series of emails certainly permits a reasonable juror to find that Defendant's proposed legitimate, non-discriminatory reason for separating Plaintiff from her employment was pretextual and that the reason was her pregnancy. *See Holland v. Gee*, 677 F.3d 1047, 1060 (11th Cir. 2012) (holding that reasons proffered by county sheriff's office for terminating female technician, namely, her failure to complete various work orders and her attitude based on her belief that "no one could touch her" because of her father's relationship with office, were pretext for pregnancy discrimination because there was testimony that technician might have been able to retain position as independent contractor on permanent or long-term basis and that she had refused assignments only because they were inconsistent with her doctor's restrictions, which office failed to accept).

After reviewing the Rule 56 record evidence and the parties' arguments, in the light most favorable to Plaintiff, the court is satisfied that she has presented enough circumstantial evidence from which a reasonable jury could find that Defendant's terminated her because of her pregnancy. *See e.g., Hicks v. City of Tuscaloosa, Alabama*, 870 F.3d 1253 (11th Cir. 2017) (holding that evidence was sufficient to support jury's finding that reassignment of female employee, after she returned from leave was pregnancy discrimination in violation of the PDA); *Holland*, 677 F.3d at 1060-64 (holding that sufficient evidence supported jury's finding of pregnancy discrimination when plaintiff was treated differently from all other employees, her pregnancy became part of decision making process regarding her employment, and her pregnancy was subject of discussions that led to her termination.).

### C. Plaintiff Has Shown Evidence of Illegal Discrimination Under a Mixed-Motive Framework

In abundance of caution, the court also analyzes Plaintiff's claims under a mixed-motive framework. In some cases, a plaintiff can survive summary judgment under a mixed-motive framework, which requires the court to decide whether the plaintiff "has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [her protected characteristic] was a motivating factor for [an] adverse employment decision." *Quigg v. Thomas Cty. Sch. Distr.*, 814 F.3d 1227, 1239 (11th Cir. 2016); *see Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); 42 U.S.C. § 2000e-2(m). The mixed-motive framework does "not call for the unnecessary burden-shifting required by *McDonnell Douglas*, nor does it suffer from *McDonnell Douglas*'s pitfall of demanding that employees prove pretext." *Id.* at 1240. Here, the court concludes that even if Plaintiff has not satisfied every part of her burden under the *McDonnell Douglas* framework, she has presented enough circumstantial evidence to survive Defendant's Motion for Summary Judgment.

Plaintiff has presented sufficient Rule 56 evidence to allow a reasonable jury to conclude that her pregnancy was at least a motivating factor in Defendant's decision to separate her from probationary employment. First, there is substantial evidence that Plaintiff was qualified as a COT at the time of her termination because she "maintained or improved upon [her] physical ability level" from the time she was hired until Defendant failed to call her in for PT in December 2015. (Doc. # 36-1 at 120-23; *see* Docs. # 40-1; 40-2; 40-3; 40-4; 40-5; 40-6; 40-7). Additionally, Dr. Banks' notes did not explicitly forbid Plaintiff from participating in PT or attending the Academy in February 2016. (Doc. # 36-1 at 112-13). Finally, the series of emails between ADOC employees on December 8, 2015 and January 20, 2016 supports a reasonable inference that Defendant sought to fire Plaintiff because of her pregnancy. (Docs. # 36-5 at 61-67).

IV.   **Conclusion**

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. # 36) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this August 6, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE